# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS BUENROSTRO,<br><br>    Plaintiff,<br><br>  v.<br><br>J. CASTILLO, et al.,<br><br>    Defendants. | 1:14-cv-00075-BAM (PC)<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND<br>(ECF No. 1)<br><br>THIRTY-DAY DEADLINE |

**First Screening Order**

**I.     Screening Requirement and Standard**

Plaintiff Jose Luis Buenrostro ("Plaintiff") is a federal prisoner proceeding pro se and in forma pauperis in this civil action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999 (1971). Plaintiff's complaint, filed on January 17, 2014, is currently before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

While prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, the pleading standard is now higher, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

Bivens actions and actions under 42 U.S.C. § 1983 "are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*." Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir.1991). Under Bivens, a plaintiff may sue a federal officer in his or her individual capacity for damages for violating the plaintiff's constitutional rights. See Bivens, 403 U.S. at 397. To state a claim a plaintiff must allege: (1) that a right secured by the Constitution of the United States was violated, and (2) that the alleged violation was committed by a federal actor.

**II.     Plaintiff's Allegations**

Plaintiff currently is housed at the United States Penitentiary in Pollock, Louisiana. He was temporarily housed at United States Penitentiary Victorville in Adelanto, California when he

initiated this action. However, the events alleged in his complaint occurred while Plaintiff was housed at FCI Mendota in Mendota, California. Plaintiff names the following defendants in their individual and official capacities: (1) J. Castillo, W/R Director; (2) A. Gill, FCI Warden; (3) Mr. Fajardo, Assistant Warden; (4) Mr. Gramm, FCI Captain; (5) Ms. Duchand, Unit Manager; (6) Mr. Dern, Unit Manager; (7) Lt. Crank, FCI Lieutenant; (8) Lt. Knoll, FCI Lieutenant; (9) Mr. LaVore, DHO Chairman; (10) A. Lozano, Correctional Officer; (11) J. Cravy, Correctional Officer; (12) Davenport, Correctional Officer; (13) Mr. Pullings, Counselor; (14) Ms. Garcia, Unit Secretary; (15) Ms. Longmore, Counselor; and (16) John Doe #1, Correctional Officer.

Plaintiff alleges as follows: Since 1995, Plaintiff has been serving a life sentence for a non-violent crime. On February 1, 2012, he was transferred from FCI Victorville to FCI Mendota for having clear conduct and to be near his family in Stockton, California. Soon after his arrival at FCI Mendota, staff became aware of a civil action filed by Plaintiff against Bureau of Prison staff members and began retaliating against him in different ways.

In mid-March or early-April 2012, Defendant Fajardo directed the Education Department head to preclude Plaintiff from using a typewriter in front of the computers at the inmate law library due to a grievance that Plaintiff filed.

At the end of May or early June 2012, Plaintiff was taken out of his cell at 5:30 a.m. and falsely accused of having a cell phone. Plaintiff was strip searched and locked in the showers for over an hour. No cell phone was ever found or ever existed. Plaintiff's family phone numbers were continuously blocked by Defendant Fajardo's personal involvement.

On July 1, 2012, while Plaintiff was visiting with his family, Plaintiff noted that he was being observed by John Doe #1, which made his family uncomfortable. The next day, on July 2, 2012, John Doe #1 asked Plaintiff if he had hidden his drugs in the cell. While Plaintiff was kept in the yard for almost 3 hours, John Doe #1 went through Plaintiff's 3 boxes of legal materials and found approximately 28 books of U.S. postage stamps that Plaintiff had accumulated between 2006 and 2008 and had been allowed to retain by R & D officers on his arrival at FCI Mendota. Defendant Duchand ordered the stamps returned to Plaintiff, but Defendant Crank

refused. Defendant Crank convinced Defendant Duchand to write Plaintiff a second incident report for filing a grievance over the stamp issue.

On or about February 13, 2013, Plaintiff wrote a grievance regarding Defendant Lt. Knoll's failure to act, which resulted in a yard disturbance between a Texas gang and Hispanic Mexican Nationals the Bureau of Prisons called "paisas." An emergency lockdown occurred on February 16, 2013, and an investigation was conducted on February 17, 2013. Plaintiff told the investigating official, Mr. Trotter, about the grievance against Lt. Knoll. As a result, on February 20, 2013, Plaintiff was sent to the Special Housing Unit (SHU) by order of Defendant Knoll when he saw Plaintiff at the dining hall as reprisal for Plaintiff's grievance. Plaintiff spent almost three months in the SHU.

Plaintiff alleges that a conspiracy against him headed by the highest member of his unit, Defendant Dern, was noticeable since late August 2012 when Defendant Dern directed Defendant Pullings and others to take visitors off of Plaintiff's list due to his grievances. On numerous grievances, Plaintiff brought the issue of such conspiracy to Defendants J. Castillo and Gill, but both turned a blind eye to the problems.

On October 20, 2013, Plaintiff was summoned to Defendant Gramm's office to discuss a recent grievance sent by Plaintiff to Warden Gill regarding the wrongful actions of Defendants Lozano and Cravy. Plaintiff explained the problem to Defendant Gramm. As a result, on October 22, 2013, Plaintiff was falsely accused of interfering with the 4:00 p.m. count by a co-conspirator, Defendant Davenport, in conjunction with Defendant Cravy. Plaintiff was sent to the SHU for almost 3 months with code 328. Plaintiff contends that no one goes to the SHU for code 300 series. Plaintiff alleges that the false accusations were further inflated by Defendant Crank, who stated in the detention order form that Plaintiff violated criminal law.

In the conspirators' haste to tarnish Plaintiff's institutional record, Defendants Knoll and Dern and underlings wrote him three additional incident reports. There were four reports in less than three weeks in an attempt to cover-up their wrongful actions and to request that Defendant Castillo transfer Plaintiff to punish him.

Plaintiff contends that the false accusations consist of (1) interfering with count, (2) having a torn or damaged mattress, (3) having a torn sheet in SHU and (4) having a letter in his door with a postage stamp suspected by Defendant Dern of not having been purchased at the prison store. Plaintiff contends that the first incident report was orchestrated by Defendant Cravy after Plaintiff wrote a grievance on October 9, 2013. Plaintiff contends that the second incident report was written by an officer not mentioned in the complaint, but who was encouraged by Defendant Dern when Plaintiff wrote a grievance three weeks earlier. Plaintiff contends that the third incident report was written by Defendant Knoll after Plaintiff sent a FOIA request regarding Defendant Knoll's reasons for sending him to the SHU on February 20, 2013. Plaintiff contends that the fourth incident report was written by Defendant Dern one week after Plaintiff wrote a grievance against him. Plaintiff asserts that Warden Gill was promptly noticed regarding the conspiracy to retaliate against him after every incident report.

In the first week of November 2013, Plaintiff notified Warden Gill that 10 other inmates were allowed to exchange their torn, damaged mattresses one week after Plaintiff's October 22, 2013 incident report and none of the other inmates were punished or given an incident report. Defendants Dern and Pullings confirmed that none of the other inmates were punished because they did the right thing. Despite Plaintiff's insistence to Warden Gill, she did nothing. Plaintiff alleges that Defendants Gill and Fajardo were informed of the blatant targeting and discrimination, but did nothing to prevent it or stop the punishment.

On October 25, 2013, Defendant Longmore conducted a Unit Disciplinary Hearing during which Plaintiff selected a staff representative to talk to his witnesses. On October 26, 2013, Plaintiff handed Defendant Longmore a written request to staff member regarding his potential witnesses. Defendant Longmore stated that she would deliver the request to Defendant Garcia.

On November 20, 2013, Defendants LaVore and Garcia conducted a disciplinary hearing. Defendant Garcia told Defendant LaVore that Plaintiff requested no witnesses despite his staff representative stating the contrary. At the hearing, Plaintiff also complained about blatant due process violations. He also pointed out to Defendant LaVore that he was being targeted and

5

being treated differently than the other 10 inmates with damaged, torn mattresses. Defendant LaVore admitted that Plaintiff received the damaged mattress on May 1, 2013, as Defendants Dern and Pullings conceded that they had no proof that he received a pristine mattress. Defendant LaVore still sanctioned Plaintiff to 30-days solitary, four months loss of phone privileges and a $50.00 fine.

Plaintiff claims that during his four disciplinary proceedings it was never mentioned that staff would recommend transferring Plaintiff. All of the paperwork was surreptitiously submitted to Defendant Castillo's Western Regional Office for approval. On November 17, 2013, two days prior to the expiration of his 30-day solitary confinement, Plaintiff was told that he was not going to general population, but had been recommended for transfer. That same day, Plaintiff confronted Defendant Dern, who reportedly stated, "We put you for transfer because you file too many grievances, and we don't [sic] the inmate in those type of circumstances." Defendant Dern further stated that Plaintiff's transfer had been approved by the regional office. At 4:00 p.m., Plaintiff's personal property was packed out.

At the end of October or early November 2013, Plaintiff put Defendant J. Castillo on notice of Defendants' intentions to punish him due to his grievances by separating him from his family. Defendant Castillo never responded to the letters.

On December 18, 2013, Plaintiff was taken out of FCI Mendota and transferred to USP Victorville to await transfer. USP Victorville was on lockdown at the time. On January 6, 2014, Plaintiff learned that he was designated to go to USP Pollock in Louisiana. Plaintiff believes that he and his property were packed quickly to prevent him from seeking help in this Court.

Plaintiff further reports that he is a U.S. Citizen born in Mexico. The Bureau of Prisons has branded him a "paisa" for being a Mexican National. This makes him inapplicable to walk in the USP Pollack yard without risking bodily injury by the Texas prison gang that fought in FC Mendota on February 16, 2013. Plaintiff alleges that Defendants Castillo and Warden Gill deliberately allowed Defendants Dern, Gramm and Knoll to recommend Plaintiff's placement at USP Pollock, where the Texas gang has been known by Defendants to brutally beat and stab Mexican Nationals to death. Plaintiff asserts that he is not a gang member, but his Mexican

descent has placed his life in jeopardy from the Texas gang. Plaintiff claims that he qualifies for at least 6 institutions in California.

Plaintiff asserts the following causes of action: (1) violation of his First, Fifth and Fourteenth Amendment rights by Defendants Castillo and Gill for permitting their underlings to retaliate against him for filing grievances, violating his due process rights in the various proceedings and discriminating against him by treating him differently than others; (2) violation of his Fifth and Fourteenth Amendment rights to due process and equal protection; and (3) violation of his First Amendment rights by Defendants Duchand, Dern, Crank, Knoll, Lozano, Cravy, Davenport, Pullings and John Doe by retaliating against him for filing grievances.

Plaintiff requests monetary damages.

### III. Deficiencies of Complaint

Plaintiff's complaint does not comply with Federal Rules of Civil Procedure 8 and 18. Plaintiff will be granted leave to file an amended complaint. To assist Plaintiff, the Court provides the pleading and legal standards that appear applicable to his claims. Plaintiff should amend only those claims that he believes, in good faith, state a cognizable claim.

### A. Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556–557; Moss, 572 F.3d at 969.

Plaintiff's complaint does not include a short and plain statement of his claims. Rather, Plaintiff's complaint is filled with conclusory statements, such as assertions of conspiracy or purported knowledge of complaints and grievances, which do not provide specific factual information to permit the Court to determine if Plaintiff has stated a plausible claim for relief

7

against the individually named defendants.  If Plaintiff elects to amend his complaint, he must set forth specific factual allegations against each defendant.

### B. Federal Rule of Civil Procedure 18

Plaintiff is raising numerous claims based on different events.  Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Insurance Co. of North America, 623 F.2d 1371, 1375 (9th Cir. 1980).  Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not assert a due process claim related to disciplinary proceedings in 2013, while simultaneously asserting a First Amendment retaliation claim involving events in 2012.  Plaintiff may not attempt to circumvent this deficiency merely by stating that defendants at the same institution are part of an overriding conspiracy.  An actionable Bivens conspiracy claim requires (1) the existence of an express or implied agreement among the defendants to deprive the plaintiff of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement.  Ting v. United States, 927 F.2d 1504, 1512 (9th Cir. 1991).  Plaintiff has not set forth sufficient factual allegations to establish the existence of an express or implied agreement among the defendants.

In his amended complaint, Plaintiff shall choose which claims he wishes to pursue in this action.  If Plaintiff does not do so and his amended complaint sets forth unrelated claims which violate joinder rules, the Court will dismiss the claims it finds to be improperly joined.

### C. Bureau of Prisons and Official Capacity Defendants

Plaintiff pleads claims against defendants in their official capacities for damages.  However, a Bivens claim for damages does not extend to federal agencies or to officers named in

an official capacity. See Minneci v. Pollard, --- U.S. ---, 132 S.Ct. 617, 623-24, 181 L.Ed.2d 606 (2012); see also Ibrahim v. Department of Homeland Sec., 538 F.3d 1250, 1257 (9th Cir. 2008) ("no *Bivens*-like cause of action is available against federal agencies or federal agents sued in their official capacities"). Accordingly, Plaintiff's complaint fails to state a Bivens claim against the Bureau of Prisons or a defendant in his or her official capacity.

### D. Count One – Violation of the First, Fifth and Fourteenth Amendments by Defendants Castillo and Gill

Plaintiff asserts that Defendants Castillo and Gill violated his First, Fifth and Fourteenth Amendment rights by permitting their underlings to retaliate against him for filing grievances, violating his due process rights in the various proceedings and discriminating against him by treating him differently than others. Plaintiff claims against Defendants Castillo and Gill are based on their supervisory capacities.

Plaintiff may not bring a claim against Defendants Castillo and Gill based on a theory of supervisory liability. Iqbal, 556 U.S. at 677 ("In a § 1983 suit or a *Bivens* action . . . the term "supervisory liability" is a misnomer.") A government official is only liable for his or her own misconduct. Id. Plaintiff has not alleged that Defendants Castillo and Gill caused or contributed to any of the claimed constitutional violations.

### E. Count Two – Violation of Fifth and Fourteenth Amendment

In Count Two, Plaintiff alleges that Defendants Gill, Fajardo, Gramm, LaVore, Longmore, Garcia and Dern violated his due process and equal protection rights by delaying his proceedings, denying his witnesses at the disciplinary hearing and discriminating against him by treating him differently than other similarly situated inmates with torn mattresses. (ECF No. 1, p. 13.)

As a preliminary matter, Plaintiff has failed to sufficiently link each defendant with an alleged constitutional violation. Plaintiff merely names multiple defendants in Count Two without connecting them to the asserted violation.

///

///

1. Fourteenth Amendment

As a federal prisoner, Plaintiff's purported due process and equal protection claims are secured by the Fifth Amendment, not the Fourteenth Amendment. Lopez-Galvan v. Rubio, 2013 WL 6230265, *3 (E.D. Cal. Dec. 2, 2013) (finding federal prisoner's due process and equal protection rights guaranteed by Fifth Amendment); Castillo v. McFadden, 399 F.3d 993, 1002 n. 5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States."); Consejo de Desarollo Economico de Mexicali, A.C. v. United States, 482 F.3d 1157, 1170 n. 4 (9th Cir. 2007) (Fifth Amendment's Due Process Clause subjects the federal government to constitutional limitations that are equivalent of those imposed on the states by the Equal Protection Clause of the Fourteenth Amendment) (citations and quotations omitted). Plaintiff cannot state a cognizable Fourteenth Amendment claim.

2. Fifth Amendment – Due Process

Plaintiff appears to be alleging violations of his right to due process during disciplinary hearings in violation of the Fifth Amendment. Before a prisoner is placed in disciplinary segregation, as alleged here, due process requires that a prisoner is entitled to: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. Wolff v. McDonnell, 418 U.S. 539, 563-570, 94 S.Ct. 2963, 2978-2982 (1974).

Plaintiff has alleged that he was denied the opportunity to present inmate witnesses. However, there are two primary deficiencies in Plaintiff's allegations: First, Plaintiff does not indicate whether these witnesses were willing to testify on his behalf or whether their presence would interfere with institutional security. Second, Plaintiff's allegations appear to be limited to Defendants LaVore, Garcia, and Longmore, not the other defendants identified in Count Two. In other words, Plaintiff has failed to link Defendants Gill, Fajardo, Gramm, and Dern to his due

process allegations. Further, Plaintiff's allegations of delay are unclear and do not appear to raise a due process violation.

### 3. Fifth Amendment – Equal Protection

Plaintiff appears to allege that he was treated differently from other inmates with torn mattresses in violation of his equal protection rights. "[T]he Due Process Clause of the Fifth Amendment subjects the federal government to constitutional limitations that are the equivalent of those imposed on the states by the Equal Protection Clause of the Fourteenth Amendment." Consejo, 482 F.3d at 1170 n.4. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Hartmann, 707 F.3d at 1123; Furnace, 705 F.3d at 1030; Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Here, Plaintiff has not alleged that he was intentionally discriminated against based on his membership in a protected class. Rather, Plaintiff appears to allege that other inmates with torn mattresses were intentionally treated differently. Plaintiff's allegations are not sufficient to state an equal protection claim as he has not provided sufficient facts demonstrating that he was similarly situated to other inmates with torn mattresses. In his complaint, Plaintiff asserts that according to Defendant Dern none of the other inmates were punished because they did the right

1  thing.  (ECF No. 1, pp. 7-8.)  Plaintiff has not established that he undertook the same actions as
2  the other inmates when faced with a torn mattress.

### F.  Count 3 - First Amendment - Retaliation

Plaintiff alleges that Defendants Duchand, Dern, Crank, Knoll, Lozano, Cravy, Davenport, Pullings and John Doe retaliated against him for filing grievances.  Allegations of retaliation against a prisoner's First Amendment rights to speech and to petition the government may support a civil rights claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985); see also Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir.1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir.2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir.2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir.2009).

In order to state a claim, a plaintiff must allege specific facts demonstrating that a defendant took an adverse act because of plaintiff's First Amendment activity. The plaintiff's protected conduct must have been "the 'substantial' or 'motivating' factor behind the defendant's conduct." Brodheim, 584 F.3d at 1271, quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.1989).  The adverse action must not have reasonably advanced a legitimate correctional goal.

### Defendants Duchand, Crank, Knoll and Dern

Plaintiff's complaint states cognizable retaliation claims against Defendants Duchand, Crank, Knoll and Dern.  However, Plaintiff's allegations against these defendants are not appropriate in a single action and violate the joinder rules discussed in previous sections.  If Plaintiff elects to amend his complaint, he must decide which incidents and which defendants he seeks to pursue in this action.  Plaintiff is not precluded from filing separate actions against unrelated defendants involving different incidents.

Defendant John Doe

Plaintiff has failed to state a cognizable retaliation claim against Defendant John Doe. At best, Plaintiff alleges that Defendant John Doe conducted a search of Plaintiff's cell after suspecting Plaintiff of having hidden drugs and confiscated 28 books of postage stamps during the search. Plaintiff's complaint lacks factual allegations establishing that Defendant John Doe conducted the search in retaliation for any protected conduct.

Defendants Lozano, Cravy, Davenport and Pullings

Plaintiff has failed to state a cognizable retaliation claim against Defendants Lozano, Cravy, Davenport and Pullings. Plaintiff has not included sufficient factual allegations to establish that these defendants took an adverse action against him *because of* his protected conduct or that their actions did not serve to advance a legitimate correctional goal. In particular, Plaintiff has not included any factual allegations detailing any actions taken by Defendant Lozano. Plaintiff has asserted only conclusory allegations against Defendants Cravy, Davenport and Pullings.

**IV.   Conclusion and Order**

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8 and 18. However, the Court will provide Plaintiff with the opportunity to file a first amended complaint. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what the named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012) (en banc). Therefore, Plaintiff's

first amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Plaintiff's complaint is dismissed for failure to comply with Federal Rules of Civil Procedure 8, 18 and 20.
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a first amended complaint; and
4. <u>If Plaintiff fails to file a first amended complaint in compliance with this order, this action will be dismissed with prejudice for failure to state a claim.</u>

IT IS SO ORDERED.

Dated:   **April 15, 2014**                    /s/ Barbara A. McAuliffe
                                               UNITED STATES MAGISTRATE JUDGE