1
2
3
4
5

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS BUENROSTRO, | ) 1:14-cv-00075-BAM (PC) |
| Plaintiff, | ) |
| | ) SCREENING ORDER DISMISSING FIRST |
| | ) AMENDED COMPLAINT WITH LEAVE |
| v. | ) TO AMEND |
| | ) (ECF No. 23) |
| J. CASTILLO, et al., | ) |
| | ) THIRTY-DAY DEADLINE |
| Defendants. | ) |
| | ) |
| | ) |
| _____ | ) |

**I.      Screening Requirement and Standard**

Plaintiff Jose Luis Buenrostro ("Plaintiff") is a federal prisoner proceeding pro se and in forma pauperis in this civil action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971).  Plaintiff initiated this action on January 17, 2014.  Plaintiff's first amended complaint, filed on May 5, 2014, is currently before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

While prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, the pleading standard is now higher, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

Bivens actions and actions under 42 U.S.C. § 1983 "are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*." Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir.1991).  Under Bivens, a plaintiff may sue a federal officer in his or her individual capacity for damages for violating the plaintiff's constitutional rights. See Bivens, 403 U.S. at 397.  To state a claim a plaintiff must allege: (1) that a right secured by the Constitution of the United States was violated, and (2) that the alleged violation was committed by a federal actor.

## II.   Plaintiff's Allegations

Plaintiff currently is housed at the United States Penitentiary in Pollock, Louisiana.  The events alleged in his amended complaint occurred while Plaintiff was housed at FCI Mendota in

Mendota, California.  Plaintiff names the following defendants:  (1) Juan Castillo, BOP Western Regional Director; (2) A. Gill, FCI Mendota Warden; (3) D. Fajardo, Associate Warden; (4) E. Gramm, Captain; (5) Y. Duchand, Unit Manager; (6) J. Dern, Unit Manager; (7) B. Crank, Lt.; (8) S. Knoll, SIS Lt.; (9) J. De Vore, DHO Chairman; (10) J. Cravy, Correctional Officer; (11) N. Davemport, Correctional Officer; (12) J. Pullings, FCI Mendota Counselor; (13) Ms. Garcia, Unit Sec./DHO Coord.; (14) L. Longmore, FCI Mendota Counselor; and (16) M. Khem, Correctional Officer.

Plaintiff alleges:  Since 1995, Plaintiff has been a federal prisoner serving a life sentence for a non-violent crime.  On February 1, 2012, he was transferred from FCI Victorville to FCI Mendota for having "clear conduct" and to be near his family.  Soon after his arrival at FCI Mendota, prison staff became aware of a civil rights action filed by Plaintiff against prison staff members and they began retaliating against him in different ways.

On March 11, 2012, Defendant Fajardo directed SIS Bragan to block the phone numbers of Plaintiff's family.

On May 4, 2012, Ms. Carrasco, head of the Education Department, told Plaintiff that Defendant Fajardo directed her to preclude Plaintiff from using the typewriter inside the inmate Electronic Law Library (ELL) in front of the computer monitor due to a grievance Plaintiff had filed and a civil action.

Due to Plaintiff's May 2012 grievance and then civil action, Defendant Fajardo seemed adamant about cutting off Plaintiff's communication with his family.  On May 14, 2012, Defendant Fajardo and SIS Brian blocked the new telephone numbers of Plaintiff's family members.

On May 22, 2012, Defendant Fajardo directed SIS Brian, two lieutenants and two correctional officers to search Plaintiff's cell at 5:00 a.m.  Plaintiff was falsely accused of having a cell phone.  Plaintiff was strip searched and locked in the showers for over an hour as the officers searched his cell.  No cell phone existed.

On June 17, 2012 (Father's Day), Plaintiff's oldest son and Plaintiff's three minor grandchildren (ages 14, 8 and 4) were denied entrance into the institution to visit Plaintiff.  The

front lobby correctional officer said that Defendant Fajardo was implementing a new policy on minors.  In previous weeks, family and children did not have any problem visiting Plaintiff.

Plaintiff constantly complained to the Warden of this "targeting treatment" to no avail. Since the prison staff became aware of his civil action, Plaintiff was selected to sit beside the visiting officer's station every time he had a visit.  Lieutenant Gregory later confirmed that Plaintiff was reserved this spot due to his civil action and constant complaints to the Warden.

On July 1, 2012, while Plaintiff was visiting with his family, his family pointed out that Visiting Officer M. Khem was staring at Plaintiff and his visitors, making them uncomfortable. The next day, on July 2, 2012, Officer Khem and other correctional officers directed Plaintiff out of his cell and into the rec yard.  On Plaintiff's way out, Officer Khem asked, "Buenrostro why did it took you so long to come out, were you hiding your dope?"  (ECF No. 23, p. 5.)  Officer Khem and the other correctional officers searched Plaintiff's cell for over three hours and went through Plaintiff's 3 boxes of legal materials.  Officer Khem and the other correctional officers found approximately 28 books of new U.S. postage stamps that Plaintiff had accumulated between 2005 and 2008 and had been allowed to retain by Receiving and Discharging officials upon his arrival at FCI Mendota.

An incident report was written for the excessive postage stamps and Plaintiff was sanctioned with 30 days commissary and telephone restrictions.  At first, the postage stamps were ordered returned to Plaintiff by Defendant Duchand, but Defendant Crank refused. Plaintiff negotiated with Defendant Crank, but on August 16, 2012, Plaintiff observed Defendants Crank and Duchand in front of Unit C engaged in conversation, which Plaintiff assumes was over the U.S. postage stamps issue.  Earlier that same day, Plaintiff had observed Defendants Crank and Duchand in conversation.  Defendants Duchand and Warden Gill also discussed the issue of the postage stamps during the lunch hour.

The following day, on August 17, 2012, Defendant Duchand wrote Plaintiff a second incident report for the same U.S. Postage stamps issue.  In her report, Defendant Duchand stated, "On August 17, 2012, at approximately 8:30 am., I was preparing a response to Administrative

Remedy #699376-F1, filed by inmate Juan Buenrostro #08589-097."  (ECF No. 23, p. 6.)
Plaintiff contends that the report was inaccurate.

As a result of the second incident report regarding the postage stamps, Plaintiff was sanctioned with 90-days of commissary and visiting privileges.  Plaintiff claims that this was part of Defendant Fajardo's and other officials' target to cut Plaintiff's family ties.  Plaintiff filed an Administrative Remedy process claiming a conspiracy in order to bring the matter to the attention of Defendants Gill and Castillo.

Plaintiff asserts that ever since FCI Mendota staff became aware of his civil action against prison staff, Plaintiff and his visitors were aggressively subjected to harassment and discrimination, such as selecting them to pass a drug analysis test every time they visited, rather than being selected at random pursuant to policy.  Plaintiff claims that the front lobby official would tell Plaintiff's family that they were implementing a new policy.  Plaintiff asserts there was blatant discrimination on November 25, 2012, when he was denied his group of 5 visitors, but the prison allowed 6 visitors of another family. Plaintiff complains that the other family was a different race and he complained to Defendants Gill and Castillo.

In response to his discrimination complaint, Defendant Gill told plaintiff that any inmate in the visiting room with visitors exceeding four (4) would have been granted a special visit. Plaintiff applied for a special visit, but was told that his application was not processed.  Plaintiff contends that it was denied by Defendant Dern without following protocol.  Plaintiff alleges that Defendant Dern was one of the highest officials that followed Defendant Fajardo's "ideology" to deny Plaintiff's family visitors.  (ECF No. 23, p. 6.) On June 17, 2013, Defendant Dern falsely wrote that Plaintiff had multiple instances of family being disruptive and disrespectful to staff. (ECF No. 23, p. 7.)

On or about February 13, 2013, Plaintiff wrote a grievance to Mr. Jones regarding a problem in his area and alerted Defendant Knoll regarding the matter.  As a result of Defendant Knoll's inactions, a yard disturbance occurred between a Texas gang & Paisas that resulted in an emergency lockdown of the institution on February 16, 2013.

On February 17, 2013, Plaintiff was taken out of his cell for a routine interview. He mentioned the February 13, 2013 grievance and the inaction of Defendant Knoll as being the cause of the disturbance to investigator Trotter.

On February 20, 2013, at the end of the emergency lockdown, Plaintiff was in the dining hall. Correctional Officer Privyl told Plaintiff, "I was told by SIS Lt. Knoll when he saw you eating to lock you up." (ECF No. 23, p. 7.) When Plaintiff asked why, Correctional Officer Privyl said, "Apparently you were trying to tell on him." (ECF No. 18, p. 6.) Plaintiff was locked up for 2 ½ months in the Special Housing Unit ("SHU").

On February 25, 2013, Plaintiff filed an Administrative Remedy request BP-9 denoting the "retaliatory" action of Defendant Knoll for Plaintiff's grievance and truthful comments to Mr. Trotter, but it was not responded to. On April 9, 2013, Plaintiff filed his next level Administrative Remedy Appeal BP-10 denoting the lack of response. Plaintiff was told to follow instructions, but no instructions or responses were provided. On June 11, 2013, Plaintiff sent his next level appeal, but he was instructed that he must first file a BP-9 at the institution for the Warden's review.

On April 4, 2013, since Warden Gill ignored Plaintiff's February 25, 2013 BP-9, Plaintiff filed yet another BP-9 claiming that lack of response, due process violation and retaliation by Defendant Knoll. Plaintiff requested release from the SHU. Plaintiff was told by Lt. Marlow and Correctional Officer Arnett that if he withdrew his BP-9, then he would be released from the SHU on April 24, 2013. The next day, Plaintiff signed the withdrawal, but was not released from the SHU until May 1, 2013.

Plaintiff wrote a letter to Defendant Castillo requesting that Defendant Castillo review his subordinates' abuse of authority and retaliatory actions by Lt. Knoll. Plaintiff alleges that Defendant Castillo did not act, but on April 18, 2013, Defendant Gill responded to a letter that Plaintiff has sent to Defendant Castillo. Defendant Gill inaccurately stated that Plaintiff was placed in SHU for an investigation regarding a disturbance. However, Defendant Gill failed to address the retaliation and conspiracy of Lt. Knoll and others. Defendant Gill knew of Lt.

Knoll's abuse of authority when Plaintiff wrote a grievance to her.  Although Defendant Gill responded to Plaintiff's grievance, she did nothing to prevent the retaliatory actions.

On April 30, 2013, Plaintiff wrote a second letter to Defendant Castillo regarding the wrongful actions of staff and the lack of adherence to BOP policy regarding his grievances. Defendant Castillo never responded.  Instead, Defendant Castillo had Melinda Clark respond to the Administrative Remedy filed April 4, 2013, but ignored the February 25, 2013 request.

On April 4, 2013, Defendants Dern and Pullings responded to Plaintiff's second Administrative Request with false, inaccurate and misleading information that Plaintiff was being held in the SHU pending an investigation involving the Federal Bureau of Investigation. Defendant Pullings also verbally told Plaintiff that was why his first BP-9 was not processed. The memorandum also stated that staff may not question an inmate until the FBI or other investigative agency releases the incident report for administrative processing.  Plaintiff claims that both Defendants were aware that there was not any incident report.

On June 26, 2013, Plaintiff wrote a letter to BOP Director Charles Samuels, Jr., to denounce the discriminatory treatment of his family and Defendant Dern's abuse of authority.

In early July 2013, Defendant Dern was working in the front lobby when Plaintiff's family arrived for visiting.  The staff was making a new requirement to enter the institution.  One of Plaintiff's sons asked where in the policy it stated such a new requirement.  Defendant Dern got mad and threatened to call the Sheriff when he was discovered in a lie by stating that the policy was at the Warden's desk for new changes.  Reluctantly, Defendant Dern allowed Plaintiff's family to enter the institution and visit Plaintiff.

Plaintiff alleges that Defendant Dern's grudge over the policy discussion grew and he approached Plaintiff about his son's policy inquiry.  On July 17, 2013, Defendant Pullings called Plaintiff into his office and told Plaintiff that some of his family members were off the visiting list because Defendant Dern was conducting an audit of Plaintiff's visiting list forms.  By this time, Defendants were aware of a letter that Plaintiff had written to BOP Director Charles Samuels dated June 26, 2013.  Plaintiff had included the copy of a special visit denial done by Defendant Dern without following protocol.  As a result of Defendants' audit of the visiting

forms, one of Plaintiff's sons (the target of Defendants Dern and Fajardo) was not approved to visit his father.  Defendant Gill was notified of the abuse of authority, but she turned a deaf ear to Plaintiff's complaints.

On October 9, 2013, Plaintiff filed an Administrative Remedy (A/R) request BP-9 to Defendant Gill regarding the non-stop harassment in retaliation for filing grievances.  In the BP-9, Plaintiff denounced Defendant Cravy's false accusations of introducing drugs into the institution.  Plaintiff again complained to Defendant Gill about the disrespectful manner in which her correctional officers treated him.

On October 21, 2013, Plaintiff was summoned to Defendant Gramm's office to discuss a recent grievance sent by Plaintiff to Warden Gill regarding the wrongful actions of Defendant Cravy and other correctional officers.  Plaintiff explained the problem to Defendant Gramm, including the false accusations of Defendant Cravy that Plaintiff was introducing drugs back into the institution after his visits.  Defendant Gramm assured Plaintiff that this kind of treatment would stop.  However, the following day, on October 22, 2013, Defendant Cravy falsely accused Plaintiff of interfering with the 4:00 p.m. count while secure inside his cell.  Plaintiff was sent to the SHU for almost 3 months with a 300 series incident report.  Plaintiff contends that no one goes to the SHU for code 300 series.  Plaintiff alleges Defendants Crank and Davemport were in cahoots with Defendant Cravy to make it look as if it was a violation of criminal law.

On the same day, October 22, 2013, another officer, whom Plaintiff had recently filed a grievance against, wrote "another shot" accusing Plaintiff of having a torn mattress.  Plaintiff alleges that the mattress he received upon his release from the SHU in May was already damaged.  Defendants Gill and Gramm indicated that Plaintiff had been held in the SHU because he was accused of having a torn or damaged mattress and was awaiting a disciplinary hearing. Defendants knew that there were 10 other inmates who had torn, damaged mattress, but were not sanctioned.  These other prisoners were of a different race and had not written grievances.

On September 16, 2013, Plaintiff was handed legal mail from the Western Regional Office regarding his Freedom of Information Act request in which he requested written documentation regarding the reasons he was sent to the SHU on February 20, 2013 by Lt. Knoll.

This inquiry infuriated Lt. Knoll.  After Lt. Knoll returned from a week leave, on October 31, 2013, when he walked inside the SHU inmate law library and saw Plaintiff, he immediately sought SHU correctional officers.  In less than 10 minutes, Lt. Knoll came back into the SHU law library and handed Plaintiff another shot for having a torn or damaged sheet, which SHU Officer Lakey had given Plaintiff on arrival to the SHU.  Plaintiff had confronted SHU Officer Lakey about the sheet to no avail.

On November 5, 2013, a Unit Disciplinary Hearing was conducted.  Plaintiff, on a procedural error, was not found guilty by Defendant Dern.  Due to the procedural error, on November 8, 2013, Plaintiff filed his A/R appeal, which infuriated Defendant Dern.  In furtherance of the conspiracy, Defendant Dern came into Plaintiff's SHU cell on November 12, 2013, to personally search for contraband.  Defendant Dern failed to find anything, but a day later, Plaintiff received a fourth shot.  Defendant Dern wrote in his report that while conducting rounds, he observed that Plaintiff had mail in his door to be picked up, which he found suspicious since Plaintiff had not bought stamps since March 1, 2013.

Plaintiff alleges that in every one of the incident reports, Defendant Gill was promptly notified in writing of the conspiracy by her staff to retaliate against Plaintiff for his grievances.  Defendant Gill and Castillo turned a deaf ear to Plaintiff's pleas for help.

On October 25, 2013, a UDC hearing was conducted by Defendant Longmore regarding the second shot written on October 22, 2013 related to the torn mattress.  Plaintiff selected Correctional Officer Davila as his staff representative to gather evidence and talk to Plaintiff's witnesses. On October 28, 2013, Plaintiff handed her a written request regarding the name of potential witness.  Defendant Longmore told Plaintiff that she would give it to Defendant Garcia so that she would note the names of Plaintiff's witnesses and Correctional Officer Davila could talk to them before the disciplinary hearing officer.

On November 20, 2013, Plaintiff was taken to a hearing at which Defendant Garcia was present.  Defendant Garcia stated that Plaintiff did not request any witnesses.  Plaintiff and his staff representative were surprised by the inaccurate statements because the staff representative had already talked to Plaintiff's witnesses that were willing to testify.  During the preparation for

the hearing, Plaintiff's staff representative told Plaintiff that "higher ups" warned him not to talk to Plaintiff regarding the evidence he had seen nor the names, dates or context of memos written against him.  During the hearing, Plaintiff pointed out to the hearing officer, Defendant De Vore, that he was being discriminated against because there were 10 other inmates who had torn, damaged mattresses and they were not being punished or sent to the SHU.  Defendant De Vore stated, "We are here on your incident report, not other inmates.  The other inmates did the right thing."  Plaintiff assumes that the "right thing" would have been not filing any grievances against staff.  Plaintiff was sanctioned with 30 days additional solitary confinement, 4 months additional telephone restrictions, and a $50.00 fine.

On November 21, 2013, Plaintiff notified the Warden in writing of the rigged disciplinary hearing, including the conspiracy to deprive him of his rights under the Due Process Clause to present evidence and witnesses.

On November 27, 2013, Plaintiff mailed his A/R appeal to the W/R office.  The appeal concerned violations of his due process rights at the disciplinary hearing and discrimination.  Plaintiff was told by Ms. Bellino at USP Pollack that there was no record of this appeal.  Plaintiff believes that defendants failed to mail his letter from FCI Mendota.

Plaintiff alleges that Defendant De Vore conceded during the disciplinary hearing that there was no proof that Plaintiff had received a pristine mattress and lowered the charge to a code 305.  Defendant De Vore refused to take into consideration that Plaintiff was discriminated against.  Defendant De Vore stated in his written findings that he had relied on a memorandum provided by G. Pullings and C/O Rodriguez.  Plaintiff was denied access to the memorandum.  The memorandum was falsely written by Defendant Pullings, who was "in cahoots" with Dern, Ms. Garcia and Longmore.  The mattress issue did not come to light until Plaintiff brought it up to the Warden.  Plaintiff alleges that Defendant Pullings backdated a memorandum.

Plaintiff alleges that the four incident reports he received in less than three weeks were falsely fabricated and were more shots than he had received in the sixteen years he had been in prison before arriving at FCI Mendota in 2012.  Plaintiff contends that there was no mention of his transfer during the four disciplinary proceedings.  Plaintiff claims that the paperwork was

10

surreptitiously submitted to the W/R office for approval to Defendant Castillo in retaliation for filing too many grievances.  Plaintiff was transferred from his family to USP Pollock, LA on December 18, 2013.

On November 3, 2013, and November 24, 2013, Plaintiff wrote letters to Defendant Castillo regarding the retaliatory and conspiratorial action of FCI Mendota staff, but none of his letters were answered.  Plaintiff alleges that Defendant Castillo condoned the wrongful actions.

Plaintiff alleges that placing him where gangs exist that have a grudge against Mexican Nationals puts him at risk of serious bodily injury even though Plaintiff has never been a member of any gang.  Plaintiff contends that Defendants deliberately transferred Plaintiff to a higher-security USP instead of a FCI purely in retaliation for exercising his First Amendment rights to file grievances.  Plaintiff further contends that Defendants deliberately sent Plaintiff to USP Pollock, with the intention of putting him at serious risk of bodily by the many Texas gang members that have injured Mexican Nationals.

Plaintiff also alleges that Defendants delayed Plaintiff's mail.  Plaintiff alleges that Defendant Dern admitted to taking Plaintiff's mail and should be prosecuted.

On April 7, 2014, Plaintiff received a written explanation by USP Pollock staff regarding Plaintiff's concern to return to an institution in California.  Plaintiff had been told verbally that he would remain at USP Pollock for a period of 18 months before he could be considered for a transfer back to California.  Plaintiff contends that Defendants Castillo and Gill should be ordered to submit the paperwork to arrange Plaintiff's transfer back to an institution in California near his family.

Plaintiff asserts the following legal claims:  (1) retaliation in violation of the First Amendment against Defendant Fajardo by blocking Plaintiff's family phone numbers and searching his cell; (2) violation of the Plaintiff's First and Fifth Amendment rights against Defendants Castillo, Gill and Gramm for failing take disciplinary action against their subordinates; (3) violation of Plaintiff's Fifth Amendment Due Process rights against Defendants De Vore, Garcia, Dern and Longmore related to his disciplinary hearing; (4) violation of Plaintiff's First Amendment rights against Defendant Dern resulting from interference with

Plaintiff's mail; (5) conspiracy to retaliate against Defendants Duchand, Dern, Crank, Knoll, Cravy, Khem, Davemport, and Pullings related to false and misleading incident reports; (6) retaliation in violation of the First Amendment against Defendants Dern , Pullings, Knoll, Cravy, Khem, Crank, Castillo and Gill.

As relief, Plaintiff seeks declaratory relief, injunctive relief in the form of a transfer to an institution in California, removal of fabricated incident reports and prevention of future retaliation, and compensatory and punitive damages.

### III.   Deficiencies of Complaint

As with Plaintiff's original complaint, Plaintiff's amended complaint does not comply with Federal Rules of Civil Procedure 8 and 18.  Plaintiff will be granted a final opportunity to amend his complaint and cure the identified deficiencies.  To assist Plaintiff, the Court again provides the relevant pleading and legal standards that appear applicable to his claims.  Plaintiff should amend only those claims that he believes, in good faith, state a cognizable claim.

#### A.  Pleading Standards

##### 1.  Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556–557; Moss, 572 F.3d at 969.

Plaintiff's amended complaint does not include a short and plain statement of his claims. Instead, Plaintiff's complaint is lengthy, eighteen-page, single-spaced narrative detailing various events taking place between February 2012 and April 2014 while Plaintiff was housed at FCI Mendota.  Plaintiff's complaint also contains conclusory statements, conjecture and assumptions of fact, such as assertions of conspiracy and falsification of reports and statements.  Many of

Plaintiff's allegations do not provide specific factual information to permit the Court to determine if Plaintiff has stated a plausible claim for relief against the individually named defendants.  If Plaintiff elects to amend his complaint, he must set forth a short and plain statement of the claims against each defendant, rather than a narrative of his time at FCI Mendota.

### 2.   Federal Rule of Civil Procedure 18

Plaintiff is raising numerous claims against different defendants based on different events.  Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Insurance Co. of North America, 623 F.2d 1371, 1375 (9th Cir. 1980).  Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not assert a due process claim related to disciplinary proceedings in 2013, while simultaneously asserting various First Amendment retaliation claims involving discrete events in 2012.  Plaintiff also may not attempt to circumvent this deficiency merely by stating that defendants at the same institution are part of an overriding conspiracy.  An actionable Bivens conspiracy claim requires (1) the existence of an express or implied agreement among the defendants to deprive the plaintiff of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement.  Ting v. United States, 927 F.2d 1504, 1512 (9th Cir. 1991).  Plaintiff has not set forth sufficient factual allegations to establish the existence of an express or implied agreement among the defendants.

If Plaintiff elects to amend his complaint, Plaintiff shall choose which claims he wishes to pursue in this action.  If Plaintiff does not do so and his amended complaint again sets forth

1    unrelated claims which violate joinder rules, the Court will dismiss the claims it finds to be

2    improperly joined.

3    **B.  Legal Standards**

4    **1.  Supervisory Liability**

5    Plaintiff may not bring a claim against any defendants, including Defendants Castillo and

6    Gill, based on a theory of supervisory liability.  <u>Iqbal</u>, 556 U.S. at 677 ("In a § 1983 suit or a

7    <i>Bivens</i> action . . . the term "supervisory liability" is a misnomer.")  A government official is only

8    liable for his or her own misconduct.  <u>Id.</u>  Plaintiff has not alleged that the supervisory

9    defendants caused or contributed to any of the claimed constitutional violations.  Plaintiff's after-

10   the-fact complaints and appeals to Defendants Castillo and Gill (or other supervisors) are not

11   sufficient to impose liability.

12   **2.  Fifth Amendment – Due Process**

13   Plaintiff alleges a violation of his Fifth Amendment due process rights related to a

14   disciplinary hearing.  Before a prisoner is placed in disciplinary segregation, as alleged here, due

15   process requires that a prisoner is entitled to:  (1) a written statement at least 24 hours before the

16   disciplinary hearing that includes the charges, a description of the evidence against the prisoner,

17   and an explanation for the disciplinary action taken; (2) an opportunity to present documentary

18   evidence and call witnesses, unless calling witnesses would interfere with institutional security;

19   and (3) legal assistance where the charges are complex or the inmate is illiterate.  <u>Wolff v.</u>

20   <u>McDonnell</u>, 418 U.S. 539, 563-570, 94 S.Ct. 2963, 2978-2982 (1974).

21   Plaintiff has stated a claim for denial of due process in connection with disciplinary

22   hearing regarding his torn mattress.  However, as noted above, Plaintiff's allegations in this

23   complaint violate joinder rules.  If Plaintiff elects to amend his complaint, he must decide which

24   incidents and which defendants he seeks to pursue in this action.

25   **3.  Fifth Amendment – Equal Protection**

26   Plaintiff appears to allege that he was treated differently from other inmates with torn

27   mattresses in violation of his equal protection rights.  Plaintiff also appears to allege an Equal

28   Protection claim related to denial of his visitors.

The Due Process Clause of the Fifth Amendment "subjects the federal government to constitutional limitations that are the equivalent of those imposed on the states by the Equal Protection Clause of the Fourteenth Amendment." Consejo de Desarrollo Economico de Mexicali, A.C., v United States, 482 F.3d 1157, 1170 n.4 (9th Cir. 2007).  The Equal Protection Clause requires that persons who are similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Hartmann, 707 F.3d at 1123; Furnace, 705 F.3d at 1030; Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Here, Plaintiff's allegations do not state an equal protection claim related to his torn mattress as he has not provided sufficient facts demonstrating that he was similarly situated to other inmates with torn mattresses.  In his complaint, Plaintiff asserts that according to Defendant Dern none of the other inmates were punished because they did the right thing. Plaintiff has not established that he undertook the same actions as the other inmates when faced with a torn mattress.

Plaintiff's allegations also do not state an equal protection claim related to denial of his visitors.  In his complaint, Plaintiff has failed to allege any facts suggesting that defendants intentionally denied him certain visitors or his family because of his race.

///

1

### 4.   First Amendment - Retaliation

2      Allegations of retaliation against a prisoner's First Amendment rights to speech and to

3 petition the government may support a civil rights claim. <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532

4 (9th Cir.1985); <u>see</u> <u>also</u> <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir.1995). "Within the prison

5 context, a viable claim of First Amendment retaliation entails five basic elements: (1) An

6 assertion that a state actor took some adverse action against an inmate (2) because of (3) that

7 prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

8 Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

9 <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567–68 (9th Cir. 2005); <u>accord</u> <u>Watison v. Carter</u>, 668 F.3d

10 1108, 1114-15 (9th Cir. 2012); <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).

11      In order to state a claim, a plaintiff must allege specific facts demonstrating that a

12 defendant took an adverse act because of plaintiff's First Amendment activity. The plaintiff's

13 protected conduct must have been "the 'substantial' or 'motivating' factor behind the defendant's

14 conduct." <u>Brodheim</u>, 584 F.3d at 1271, quoting <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d 1310,

15 1314 (9th Cir. 1989).  The adverse action must not have reasonably advanced a legitimate

16 correctional goal.

17    <u>Defendants Fajardo, Duchand, Knoll and Dern</u>

18      Plaintiff's complaint states cognizable retaliation claims against Defendants Fajardo,

19 Duchand, and Dern, but not any other defendants.  However, Plaintiff's allegations against these

20 defendants are not appropriate in a single action and violate the joinder rules discussed in

21 previous sections.  If Plaintiff elects to amend his complaint, he must decide which incidents and

22 which defendants he seeks to pursue in this action.  Plaintiff is not precluded from filing separate

23 actions against unrelated defendants involving different incidents.

24    <u>Defendant Khem</u>

25      Plaintiff has failed to state a cognizable retaliation claim against Defendant Khem.  At

26 best, Plaintiff alleges that Defendant Khem conducted a search of Plaintiff's cell after suspecting

27 Plaintiff of having hidden drugs and confiscated 28 books of postage stamps during the search.

28 Plaintiff's complaint lacks factual allegations establishing that Defendant Khem conducted the

search in retaliation for any protected conduct and the search did not advance a legitimate correctional goal.

Defendant Pullings, Cravy, Crank, Davemport, Longmore, Garcia, Gramm, De Vore, Castillo and Gill

Plaintiff has failed to state a cognizable retaliation claim against Defendants Pullings, Cravy, Crank, Davemport, Longmore, Garcia, Gramm, De Vore, Castillo, and Gill.  Plaintiff has not included sufficient factual allegations to establish that these defendants took an adverse action against him *because of* his protected conduct or that their actions did not serve to advance a legitimate correctional goal.

Insofar as Plaintiff's claim is based on his transfer to another prison facility, he has no constitutional right to a particular prison.  See Olim v. Wakinekona, 461 U.S. 238, 245 (1983).  As such, Plaintiff's housing at a particular prison or facility is not a constitutionally protected.  He therefore fails to state a cognizable retaliation claim related to his transfer.

### 5.  Tampering with Outgoing Mail

Prisoners have "a First Amendment right to send and receive mail."  Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995).  However, an isolated incident of mail interference or tampering usually does not support a claim under section 1983 for the violation of a constitutional right.  See Davis v. Goord, 320 F.3d 346, 351 (2d. Cir. 2003) (isolated incident of mail tampering usually insufficient to state claim); Grant v. Warden, 2011 WL 4048524, at *2 (E.D.Cal. Sept. 9, 2011.

Plaintiff alleges that Defendant Dern took his mail.  This was an isolated incident and related to Plaintiff's alleged possession of contraband.  Under these allegations, the Court finds that Plaintiff has failed to state a cognizable claim against Defendant Dern related to his outgoing mail.

### 6.  Declaratory Relief

Plaintiff seeks a declaration that his rights were violated. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426,

431, 68 S.Ct. 641, 92 L.Ed. 784 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, the verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that a defendant violated Plaintiff's rights is unnecessary.

## IV.   Conclusion and Order

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8 and 18. However, the Court will provide Plaintiff with a final opportunity to amend his complaint. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what the named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012) (en banc).  Therefore, Plaintiff's first amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1.   The Clerk's Office shall send Plaintiff a complaint form;

2.   Plaintiff's complaint is dismissed for failure to comply with Federal Rules of Civil Procedure 8, 18 and 20.

3.   Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a second amended complaint; and

4.   <u>If Plaintiff fails to file a second amended complaint in compliance with this order,</u>
<u>this action will be dismissed with prejudice for failure to state a claim.</u>

IT IS SO ORDERED.

Dated:    **November 25, 2014**          /s/ *Barbara A. McAuliffe*
                                                  UNITED STATES MAGISTRATE JUDGE