# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS BUENROSTRO,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>J. CASTILLO, et al.,<br><br>　　　　Defendants. | 1:14-cv-00075-BAM (PC)<br><br>SCREENING ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND<br><br>(ECF No. 26)<br><br>THIRTY-DAY DEADLINE |

**I.    Screening Requirement and Standard**

Plaintiff Jose Luis Buenrostro ("Plaintiff") is a federal prisoner proceeding pro se and in forma pauperis in this civil action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971).  Plaintiff initiated this action on January 17, 2014.  On November 26, 2014, the Court dismissed Plaintiff's first amended complaint with leave to amend.  (ECF No. 24.)  Plaintiff's second amended complaint, filed on December 19, 2014, is currently before the Court for screening.  (ECF No. 26.)

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

While prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, the pleading standard is now higher, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

Bivens actions and actions under 42 U.S.C. § 1983 "are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*." Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir.1991). Under Bivens, a plaintiff may sue a federal officer in his or her individual capacity for damages for violating the plaintiff's constitutional rights. See Bivens, 403 U.S. at 397. To state a claim a plaintiff must allege: (1) that a right secured by the Constitution of the United States was violated, and (2) that the alleged violation was committed by a federal actor.

**II.    Plaintiff's Allegations**

Plaintiff currently is housed at the United States Penitentiary in Pollock, Louisiana. The events alleged in his amended complaint occurred while Plaintiff was housed at FCI Mendota in

Mendota, California.  Plaintiff names the following defendants:  (1) Juan Castillo, BOP Western Regional Director; (2) A. Gill, FCI Mendota Warden; (3) D. Fajardo, Associate Warden; (4) E. Gramm, Captain; (5) Y. Duchand, Unit Manager; (6) J. Dern, Unit Manager; (7) B. Crank, Lt.; (8) S. Knoll, SIS Lt.; (9) J. DeVore, DHO Chairman; (10) J. Cravy, Correctional Officer; (11) N. Davemport, Correctional Officer; (12) J. Pullings, FCI Mendota Counselor; (13) Ms. Garcia, Unit Sec./DHO Coord.; (14) L. Longmore, FCI Mendota Counselor; and (16) M. Khem, Correctional Officer.

Claim 1:

Since 1995, Plaintiff has been a federal prisoner serving a life sentence for a non-violent crime.  On February 1, 2012, he was transferred from FCI Victorville to FCI Mendota for having "clear conduct" and to be near his family.  Soon after his arrival at FCI Mendota, prison staff became aware of a civil rights action filed by Plaintiff against prison staff members and they began retaliating against him in different ways, including directing in writing that an SIS agent block Plaintiff's family phone numbers and directing the head of the Education Department to preclude Plaintiff's use of the typewriter.  This occurred after Plaintiff filed a grievance on May 1, 2012.

After Plaintiff's family obtained new phone numbers, on May 14, 2012, Defendant Fajardo directed the SIS Agent to block the new phone numbers of his family due to the May 1, 2012 grievance.  In addition, Defendant Fajardo directed the SIS Agent, two lieutenants and two-to-three correctional officers to falsely accuse him of having a cell phone.  Plaintiff was strip searched and locked in the showers for over an hour while officers searched his cell.  No cell phone existed.

Claim 2:

On July 1, 2012, Plaintiff's family pointed out that Visiting Officer M. Khem was staring at Plaintiff and his visitors, making them uncomfortable.  The next day, on July 2, 2012, Officer Khem and other correctional officers directed Plaintiff out of his cell and into the rec yard.  On Plaintiff's way out, Officer Khem asked, "Buenrostro why did it took you so long to come out,

were you hiding your drugs?" (ECF No. 26, p. 6.) Another officer later told Plaintiff that he was being targeted for filing grievances. This fact was confirmed by Lt. Gregory.

Officer Khem and the other correctional officers searched Plaintiff's cell for over three hours and went through Plaintiff's 3 boxes of legal materials. Officer Khem and the other correctional officers found approximately 28 books of new U.S. postage stamps that Plaintiff had accumulated between 2005 and 2008 and had been allowed to retain by Receiving and Discharging officials upon his arrival at FCI Mendota. Plaintiff was sanctioned by the Unit Disciplinary Committee with 30-days of commissary and telephone restrictions.

Claim 3:

The confiscated postage stamps were ordered returned to Plaintiff by Defendant Duchand. However, Defendant Crank refused to return them. Plaintiff negotiated with Defendant Crank to no avail. Plaintiff wrote an A/R request BP-9 trying to retrieve the postage stamps on July 31, 2012.

On August 16, 2012, Plaintiff had a conversation with Warden Gill and Defendant Duchand during the lunch hour regarding the BP-9. On the same day, Plaintiff observed Defendants Crank and Duchand in front of Unit C engaged in conversation.

The following day, on August 17, 2012, Defendant Duchand wrote Plaintiff a second incident report for the same postage stamp issue. In her report, Defendant Duchand stated, "On August 17, 2012, at approximately 8:30 a.m., I was preparing a response to Administrative Remedy #699376-F1, filed by inmate Juan Buenrostro …." (ECF No. 23, p. 6.) Plaintiff contends that the report was inaccurate. Plaintiff also contends that Defendant Duchand pretended to ignore the negotiations over the stamps. Plaintiff again was sanctioned with a 90-day restriction of commissary and visiting privileges.

Claim 4:

On July 31, 2012, Plaintiff filed another BP-9 in order to report a conspiracy to Warden Gill regarding her staff. Plaintiff asserted that various officials were targeting him for no reason and requested the Warden's assistance. Plaintiff alleges that he was sent to the Special Housing Unit (SHU) for prolonged periods of time for no reason because of the Warden's failure to

protect him from retaliation. Plaintiff contends that he had never been sent to the SHU before he arrived at FCI Mendota. Plaintiff further contends that he warned Warden Gill ahead of time before foreseeable acts by her officials would cause constitutional violations.

On October 30, 2012, Warden Gill acted swiftly on one of Plaintiff's grievances and prevented lockdown of the entire institution. However, despite Plaintiff complaining to her in person and in writing ahead of time, Warden Gill turned a blind eye to what Plaintiff and his family endured.

Claim 5:

On or about February 13, 2013, Plaintiff wrote a grievance to Mr. Jones regarding a problem in his area and alerted Defendant Knoll regarding the matter. As a result of Defendant Knoll's inactions, a yard disturbance occurred on February 16, 2013 between two groups—a Texas Gang and Mexican Nationals—which caused an emergency lockdown of the institution.

On February 17, 2013, Plaintiff was taken out of his cell for a routine interview with Mr. Trotter. He mentioned the February 13, 2013 grievance and the inaction of Defendant Knoll as being the cause of the disturbance to the investigator, Mr. Trotter.

On February 20, 2013, at the end of the emergency lockdown, Plaintiff was in the dining hall. Correctional Officer Pribyl told Plaintiff, "I was told by SIS Lt. Knoll when he saw you eating to lock you up." (ECF No. 26, p. 9.) When Plaintiff asked why, Correctional Officer Pribyl said, "Apparently you were trying to tell on him." (ECF No. 26, p. 9.) Plaintiff was locked up in the Special Housing Unit ("SHU") for almost 3 months. Plaintiff was released to only after he filed two separate grievances. He returned to the General Population on May 1, 2013, without any incident report.

Claim 6:

On February 25, 2013, Plaintiff filed an A/R request and handed it to a member of his Unit Team regarding the retaliatory actions of Defendant Knoll and the unlawful SHU placement. Defendant Pullings failed to take the A/R to the Warden's Office

On April 9, 2013, Plaintiff filed his next level BP-10 to the regional office.

On June 11, 2013, Plaintiff sent his next level appeal to the Central Office.

Both the Regional and Central Offices instructed Plaintiff that he must first file a BP-9 at the institution for the Warden's review.

Plaintiff believes that Defendants Dern and Pullings deliberately failed to take his BP-9 to the Warden's Office. On April 4, 2013, Defendants Dern and Pullings responded to Plaintiff's second Administrative Request with false, inaccurate and misleading information that Plaintiff was being held in the SHU pending an investigation involving the Federal Bureau of Investigation. Defendant Pullings also verbally told Plaintiff that was why his first BP-9 was not processed. The memorandum also stated that staff may not question an inmate until the FBI or other investigative agency releases the incident report for administrative processing. Plaintiff claims that both Defendants were aware that there was not any incident report.

Claim 7:

In early July 2013, Defendant Dern was working in the front lobby when Plaintiff's family arrived for visiting. Defendant Dern requested a new dress code requirement for Plaintiff's family members to visit. When one of Plaintiff's sons asked Defendant Dern to show him where in the policy it stated such a new requirement, Defendant Dern got upset and threatened to call the Sheriff. When he was discovered in a lie, Defendant Dern stated that the policy was at the Warden's desk for new changes. Reluctantly, Defendant Dern allowed Plaintiff's family to enter the institution and visit Plaintiff.

On July 17, 2013, Defendant Pullings called Plaintiff into his office and told Plaintiff that some of his family members were off the visiting list because Defendant Dern was conducting an audit of Plaintiff's visiting list forms. Plaintiff's family had to submit new visiting applications. The family member who had inquired about the new changes in policy was not allowed to visit by Defendant Dern.

Plaintiff claims that Defendant Dern decided to audit his family visiting forms because he had learned of a letter Plaintiff had written to BOP Director Charles Samuels dated June 26, 2013. Plaintiff also claims that Defendant Dern wrote a false memo to the Warden stating that Plaintiff had multiple instances of his family being disruptive and disrespectful to staff.

Claims 8, 9 and 10:

On October 9, 2013, Plaintiff wrote an A/R BP-9 to Defendant Gill regarding the Defendant Cravy's harassment in retaliation for filing grievances.  Plaintiff pointed out Defendant Cravy's false accusations that Plaintiff was introducing drugs into the institution after his visit.  Plaintiff also told the Warden that he had been denouncing this constant harassment to her time and again, but she turned a blind eye to it.

On October 20 or 21, 2013, Plaintiff was summoned to Defendant Gramm's office to discuss the October 9, 2013 grievance.  Plaintiff explained the problem to Defendant Gramm, including the false accusations of Defendant Cravy that Plaintiff was introducing drugs back into the institution after his visits.  Defendant Gramm assured Plaintiff that this kind of treatment would stop.  However, on October 22, 2013, Defendant Cravy falsely accused Plaintiff of interfering with the 4:00 p.m. count while secured inside his cell.  Plaintiff claims that Defendant Cravy instigated or orchestrated the incident report written by Officer Davemport to send Plaintiff to the SHU.  In his report, Officer Davemport admitted that Plaintiff promptly showed his ID.  Officer Davemport told Plaintiff that Defendant Cravy called Lt. Crank to report the false accusations and that Lt. Crank ordered Plaintiff to be taken directly to the SHU.  Defendant Cravy wrote a memo supporting the charges.

Plaintiff was sent to the SHU for almost 3 months with a 300 series incident report.  Plaintiff contends that no one goes to the SHU for code 300 series.  Plaintiff alleges Defendants Crank and Davemport were in cahoots with Defendant Cravy to make it look as if it was a violation of criminal law.

Claim 11:

On October 22, 2013, an incident report falsely accused plaintiff of interfering with the 4:00 p.m. count while Plaintiff was secured inside his cell.  Rather than making a proper investigation, when Lt. Crank was informed that Plaintiff was involved in the rule violation, he ordered Plaintiff taken directly to the SHU.  Plaintiff claims that Lt. Crank had a grudge against Plaintiff because Plaintiff filed a grievance against Lt. Crank in July 2012.  On several occasions, Lt. Crank threatened to send Plaintiff to the SHU for no apparent reasons.

On one occasion when Plaintiff was sent to the SHU by Lt. Knoll, Lt. Crank saw Plaintiff, called him to the window and asked, "You still want your stamps." Plaintiff asked Lt. Crank if that was why he was there. Lt. Crank left the cell laughing.

On another occasion in May 2013, Lt. Crank saw Plaintiff return to the line for rice at dinner time. Plaintiff explained to Lt. Crank that the lineman had forgotten to serve him. Lt. Crank responded, "I don't send you to the SHU for that; I'll find some other excuse to send you to SHU." Lt. Crank then asked Plaintiff how long he was there the last time.

Plaintiff claims that the false accusation in October 22, 2013 provided Lt. Crank with the excuse he was waiting for. Lt. Crank sent Plaintiff to the SHU on the officer's false accusations without any investigation.

Claim 12:

Plaintiff claims that Defendants Gill and Gramm were notified of their underlings' wrongful action in time for them to stop such violations before they occurred. Plaintiff asserts that Defendants Gill and Gramm had a supervisory duty, but turned a blind eye to Plaintiff's notices.

For example, Plaintiff notified Defendants Gill and Gramm that there were at least ten other inmates that had similar torn or damaged mattresses that were not punished with any disciplinary action, much less being sent to the SHU like Plaintiff.

Plaintiff also promptly notified Defendants Gill and Gramm of the obvious delay in taking him to a DHO hearing when other inmates were being taken to a DHO hearing within one week of SHU placement. Plaintiff had to wait thirty days to see the disciplinary hearing officer, but other inmates in the same position did not. Plaintiff was given an additional 30-days solitary confinement and no credit for the time spent. Plaintiff claims that Defendant Dern told him the delay was deliberate for filing too many grievances.

Claim 13:

On September 16, 2013, Plaintiff was handed legal mail from the BOP Western Regional Office dated September 10, 2013. The mail related to Plaintiff's Freedom of Information Act request seeking written documentation of the reasons he was sent to the SHU on February 20,

1  2013, by Lt. Knoll.  This inquiry seemingly enraged Lt. Knoll.  After Lt. Knoll returned from a
2  week leave, on October 31, 2013, when he walked inside the SHU inmate law library and saw
3  Plaintiff, he immediately sought a SHU correctional officer and left with him to search Plaintiff's
4  cell.  In less than 10 minutes, Lt. Knoll came back to the SHU library door and handed Plaintiff
5  another incident report (the third in less than 9 days) for having a torn or damaged sheet.
6  Plaintiff complained to SHU Officer Lakey, who had given Plaintiff the torn sheets on arrival to
7  the SHU.  Officer Lakey said there was nothing he could do, even though he acknowledged that
8  80% of sheets are torn in the SHU.

9       Claim 14:

10       On November 5, 2013, a Unit Disciplinary Hearing was conducted.  Plaintiff was not
11  found guilty, but was not given his right to appeal.  On November 8, 2013, Plaintiff filed his A.R
12  appeal challenging the findings of the UDC chairmen, Defendant Dern.  The A/R appeal seemed
13  to enrage Defendant Dern.  On November 12, 2013, Defendant Dern came into Plaintiff's SHU
14  cell to search it for contraband, but did not find any.  Two days later, on November 14, 2013,
15  Defendant Dern wrote Plaintiff a fourth incident report.  Plaintiff believes this report was written
16  in reprisal for filing the A/R appeal.  Defendant Dern wrote in his report that he observed that
17  Plaintiff had mail in his door to be picked up, which he found suspicious since Plaintiff had not
18  bought stamps.

19       Plaintiff alleges that this was not the only time that Defendant Dern took Plaintiff's mail
20  from his door.  On November 27, 2013, Plaintiff also had legal mail in his door that Defendant
21  Dern picked up.  The mail was addressed to the W/R office regarding Plaintiff's appeal of the
22  hearing officer's November 20, 2013 erroneous findings.  The legal mail never reached its
23  destination, nor did Plaintiff's appeal of the Warden's findings on the November 8, 2013 BP-9
24  regarding Defendant Dern.  Defendant Dern allegedly picked this mail up during the first week
25  of December 2013.  According to the Western Regional Office's records, the legal mail never
26  reached its destination.

Claim 15:

On October 25, 2013, a UDC hearing was conducted by Defendant Longmore regarding the report written on October 22, 2013, related to the torn mattress. Plaintiff selected Correctional Officer Davila as his staff representative to gather evidence and talk to Plaintiff's witnesses. On October 28, 2013, Plaintiff handed Defendant Longmore a written request regarding his potential witnesses. Defendant Longmore told Plaintiff that she would give it to Defendant Garcia so that she would note the names of Plaintiff's witnesses and Correctional Officer Davila could talk to them before the disciplinary hearing.

On November 20, 2013, Plaintiff was taken to a DHO hearing at which Defendant Garcia was present. Defendant Garcia told the DHO Chairman, Mr. DeVore, that Plaintiff did not request any witnesses. Plaintiff and his staff representative were surprised by the inaccurate statements because the staff representative had already talked to Plaintiff's witnesses that were willing to testify. During the preparation for the hearing, Plaintiff's staff representative told Plaintiff that "higher ups" warned him not to talk to Plaintiff regarding the evidence he had seen nor the names, dates or context of memos written against him.

Claim 16:

During the November 20, 2013 hearing, Plaintiff pointed out to hearing officer Defendant DeVore that he was being denied his due process by not allowing his witnesses to testify. Plaintiff also pointed out that he was being discriminated against because there were 10 other inmates who had torn, damaged mattresses and they were not being punished or sent to the SHU. Defendant De Vore stated, "We are here on your disciplinary hearing, not others; beside Ms. Garcia said you requested no witnesses and I believe her not you." Plaintiff was sanctioned with 30 days additional solitary confinement, 4 months additional telephone restrictions, and a $50.00 fine. However, Defendant DeVore conceded that staff had no proof Plaintiff received a pristine mattress. In his written findings, Defendant DeVore also stated that he had relied on memos written by Counselor Pullings and C/O Rodriguez. Plaintiff claims that he has proof that Defendant Pullings only wrote the memo with a back date in "cahoots" with Defendant Dern. The mattress issue did not come to light until Plaintiff brought it up to the Warden.

Claim 17:

Plaintiff contends that there was no mention that he would be recommended for transfer during the four disciplinary proceedings. Plaintiff claims that the paperwork was surreptitiously submitted to the W/R office for approval to Defendant Castillo before Plaintiff could object through the A/R process. Plaintiff found out about it three days prior to the end of his 30-day solitary confinement from Lt. Torres, who told Plaintiff that he was not coming out to the general population because he had been referred for transfer.

On December 17, 2013, Plaintiff confronted Defendant Dern as to why he was never notified that he had been referred for transfer. Defendant Dern responded and indicated that Plaintiff was recommended for transfer because he filed too many grievances. Defendant Dern stated that Plaintiff's transfer had been approved by the regional office that day.

The following day, Plaintiff was transferred away from his family.

Claim 18:

Plaintiff wrote letters to Defendant Castillo requesting his personal intervention regarding the deprivation of his rights. Defendant Castillo failed to respond. Plaintiff alleges that in approving Plaintiff's transfer out of FCI Mendota after being notified of the deprivations of his rights, Defendant Castillo refused to terminate these acts.

In a November 3, 2013 letter to Defendant Castillo, sent via certified mail, Plaintiff denoted the retaliatory and conspiratorial actions of the FCI Mendota staff in retaliation for Plaintiff's grievances. Plaintiff sent his letter certified mail because suspected that FCI Mendota staff was tampering with his legal mail. Plaintiff believes that Defendant Castillo was timely notified of the deprivations of Plaintiff's rights, but failed to prevent the deprivations.

Summary of claims and request relief:

Plaintiff asserts the following legal claims: (1) retaliation in violation of the First Amendment against Defendants Fajardo, Khem, Duchand, Knoll, Dern, Pullings, Cravy, Davemport, Crank, (2) violation of the Plaintiff's First and Fifth Amendment rights against Defendants Gill, Gramm, Longmore, Garcia, DeVore, Dern, Fajardo, and Castillo; and (3) conspiracy against Defendants Dern, Pullings, Cravy, Davemport, Crank, Gill, Gramm, Knoll,

Longmore, Garcia, DeVore, Fajardo, and Castillo.  As relief, Plaintiff seeks compensatory and punitive damages.

### III.     Deficiencies of Complaint

Despite being provided with the relevant pleading and legal standards, Plaintiff's amended complaint again fails to comply with Federal Rules of Civil Procedure 8 and 18. Plaintiff will be given a final opportunity to amend his complaint in compliance with the relevant pleading and joinder rules.  If Plaintiff's amended complaint fails to comply with the Court's directive regarding joinder, then the Court will dismiss those claims it finds to be improperly joined.

To assist Plaintiff, the Court provides the relevant pleading and legal standards that appear applicable to his claims.  Plaintiff should amend only those claims that he believes, in good faith, state a cognizable claim for relief.

#### A.  Pleading Standards

##### 1.  Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556–557; Moss, 572 F.3d at 969.

Plaintiff's second amended complaint does not include a short and plain statement of his claims.  Instead, Plaintiff's complaint is lengthy narrative detailing various events taking place in 2012 and 2013 while Plaintiff was housed at FCI Mendota.  Plaintiff's complaint also contains conclusory statements, conjecture and assumptions of fact, such as assertions of conspiracy and falsification of reports and statements.

///

### 2. Federal Rule of Civil Procedure 18

As before, Plaintiff again is raising numerous claims against different defendants based on different events. Plaintiff has been instructed that he may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff only may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Insurance Co. of North America, 623 F.2d 1371, 1375 (9th Cir. 1980). Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not assert a due process claim related to disciplinary proceedings in 2013, while simultaneously asserting various First Amendment retaliation claims involving discrete events in 2012. Plaintiff also may not attempt to circumvent this deficiency merely by stating that defendants at the same institution are part of an overriding conspiracy. An actionable Bivens conspiracy claim requires (1) the existence of an express or implied agreement among the defendants to deprive the plaintiff of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement. Ting v. United States, 927 F.2d 1504, 1512 (9th Cir. 1991). Plaintiff has not set forth sufficient factual allegations to establish the existence of an express or implied agreement among the defendants.

### B. Legal Standards

### 1. Supervisory Liability

Plaintiff may not bring a claim against any defendants, including Defendants Castillo, Gill and Gramm, based on a theory of supervisory liability. Iqbal, 556 U.S. at 677 ("In a § 1983 suit or a *Bivens* action . . . the term "supervisory liability" is a misnomer.") A government official is only liable for his or her own misconduct. Id. Plaintiff has not alleged that the supervisory defendants caused or contributed to any of the claimed constitutional violations.

Plaintiff's after-the-fact complaints and appeals to Defendants Castillo and Gill (or other supervisors) are not sufficient to impose liability.

### 2. Fifth Amendment – Due Process

Plaintiff alleges a violation of his Fifth Amendment due process rights related to a disciplinary hearing.  Before a prisoner is placed in disciplinary segregation, as alleged here, due process requires that a prisoner is entitled to:  (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate.  Wolff v. McDonnell, 418 U.S. 539, 563-570, 94 S.Ct. 2963, 2978-2982 (1974).

In Claim 16, Plaintiff has stated a claim for denial of due process in connection with the disciplinary hearing conducted by Defendant DeVore regarding Plaintiff's torn mattress/sheets.  However, as noted above, Plaintiff's allegations in this complaint violate joinder rules.  If Plaintiff elects to amend his complaint, he must decide which incidents and which defendants he seeks to pursue in this action.

### 3. Fifth Amendment – Equal Protection

Plaintiff appears to allege that he was treated differently from other inmates with torn mattresses in violation of his equal protection rights.  The Due Process Clause of the Fifth Amendment "subjects the federal government to constitutional limitations that are the equivalent of those imposed on the states by the Equal Protection Clause of the Fourteenth Amendment."  Consejo de Desarrollo Economico de Mexicali, A.C., v United States, 482 F.3d 1157, 1170 n.4 (9th Cir. 2007).  The Equal Protection Clause requires that persons who are similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected

class, Hartmann, 707 F.3d at 1123; Furnace, 705 F.3d at 1030; Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Here, Plaintiff's allegations do not state an equal protection claim as he has not provided sufficient facts demonstrating that he was similarly situated to other inmates with torn mattresses/sheets. For instance, Plaintiff has not established that he undertook the same actions as the other inmates when faced with a torn mattress or sheets, nor has he demonstrated what actions were taken against other inmates.

### 4. First Amendment - Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech and to petition the government may support a civil rights claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985); see also Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir.1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

In order to state a claim, a plaintiff must allege specific facts demonstrating that a defendant took an adverse act because of plaintiff's First Amendment activity. The plaintiff's protected conduct must have been "the 'substantial' or 'motivating' factor behind the defendant's conduct." Brodheim, 584 F.3d at 1271, quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310,

1314 (9th Cir. 1989).  The adverse action must not have reasonably advanced a legitimate correctional goal.

Claim 1:  Defendant Fajardo

Plaintiff has stated a cognizable retaliation claim against Defendant Fajardo arising out of the blocking of phone numbers and the false accusation regarding possession of a cell phone.

Claim 2:  Defendant Khem

Plaintiff has failed to state a cognizable retaliation claim against Defendant Khem arising out of the search of Plaintiff's cell on July 2, 2012. At best, Plaintiff alleges that Defendant Khem conducted a search of Plaintiff's cell after suspecting Plaintiff of having hidden drugs and confiscated 28 books of postage stamps during the search.  Plaintiff's complaint lacks factual allegations establishing that Defendant Khem's search did not advance a legitimate correctional goal.

Claim 3:  Defendants Duchand and Crank

Plaintiff has failed to state a cognizable retaliation claim against Defendants Duchand and Crank arising out of the refusal to return Plaintiff's postage stamps or the related incident report. Plaintiff complaint lacks sufficient factual allegations demonstrating that the confiscation of postage stamps and related incident reports did not advance legitimate correctional goals.

Claims 5 and 13:  Defendant Knoll

Plaintiff's complaint states cognizable retaliation claims against Defendant Knoll.

Claims 6 and 7:  Defendants Dern and Pullings

Plaintiff's complaint states a cognizable retaliation claim against Defendants Dern and Pullings.  However, Plaintiff's allegations against these defendants are not appropriate in a single action involving claims against other defendants for unrelated actions.  If Plaintiff elects to amend his complaint, he must decide which incidents and which defendants he seeks to pursue in this action.  Plaintiff is not precluded from filing separate actions against unrelated defendants involving different incidents.

Claims 8, 9 and 10:  Defendants Cravy, Davemport and Gramm

Plaintiff has failed to state a cognizable retaliation claim against Defendant Cravy, Davemport and Gramm.  Plaintiff has not included sufficient factual allegations to establish that defendants took an adverse action against him because of his protected conduct or that their actions did not serve to advance a legitimate correctional goal.

<u>Claim 11</u>:  Defendant Crank

Plaintiff has stated a cognizable claim against Defendant Crank.  However, as discussed above, this claim violates joinder rules.

<u>Claim 15</u>:  Defendants Longmore and Garcia

Plaintiff has not stated a cognizable claim against Defendants Longmore and Garcia.  With respect to Defendant Longmore, Plaintiff has not identified any adverse action taken by Defendant Longmore, nor has he demonstrated that Defendant Longmore took any actions against Plaintiff because of his protected activity.  Similarly, with respect to Defendant Garcia, Plaintiff has not adequately alleged that Defendant Garcia took any adverse action against him because of any protected activity.

<u>Claims 17 and 18</u>:  Defendants Dern, Fajardo, Gramm and Gill

Plaintiff has failed to state cognizable retaliation claims against Defendants Dern, Fajardo, Gramm and Gill arising out of his transfer.  There is no indication that these defendants recommended Plaintiff for transfer or were responsible for the transfer decision.  Indeed, Plaintiff's own allegations indicate that Defendant Castillo was responsible for approving the transfer.  However, Plaintiff has not established that Defendant Castillo's transfer decision was *because of* any protected conduct on the part of Plaintiff.  Plaintiff's own allegations suggest that he had been involved in multiple prison disciplinary issues, which suggests a legitimate penological basis for the transfer.

Insofar as Plaintiff's claim is based on the transfer to another prison facility itself, he has no constitutional right to a particular prison.  See <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245 (1983).  As such, Plaintiff's housing at a particular prison or facility is not constitutionally protected.

**5.   Tampering with Outgoing Mail**

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995).  However, an isolated incident of mail interference or tampering usually does not support a claim under section 1983 for the violation of a constitutional right. See Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (isolated incident of mail tampering usually insufficient to state claim); Grant v. Warden, 2011 WL 4048524, at *2 (E.D. Cal. Sept. 9, 2011.

In Claim 14, Plaintiff alleges that Defendant Dern took his mail.  However, Plaintiff's allegations indicate that the confiscation of mail was related to Plaintiff's alleged possession of contraband.  Under these allegations, the Court finds that Plaintiff has failed to state a cognizable claim against Defendant Dern related to his outgoing mail.

**IV.   Conclusion and Order**

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8 and 18. However, the Court will provide Plaintiff with a final opportunity to amend his complaint to cure these deficiencies.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what the named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012) (en banc).  Therefore, Plaintiff's third amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;

2. Plaintiff's second amended complaint is dismissed for failure to comply with Federal Rules of Civil Procedure 8, 18 and 20.
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a third amended complaint; and
4. <u>If Plaintiff fails to file a third amended complaint in compliance with this order, this action will be dismissed without prejudice for failure to comply with a court order.</u>

IT IS SO ORDERED.

    Dated:   **June 10, 2015**                      /s/ *Barbara A. McAuliffe*
                                                    UNITED STATES MAGISTRATE JUDGE